Good morning, Your Honors. May it please the Court. I am Norman Leon. I am counsel for the Appellant Budget Rent-a-Car System. This appeal asks this Court to decide whether the Illinois Supreme Court would declare a contract, which renews automatically every five years, to be a contract of indefinite duration, which is therefore terminable at will. In making this decision, this Court must decide how the Illinois Supreme Court would answer two questions. The first question, can we determine when the 1962 agreement will end? The second question, if we can't determine that, does the 1962 agreement set forth a means for its termination that will allow us to determine the duration of the agreement? If neither question can be answered yes, then the agreement is one of indefinite duration under Illinois law and therefore terminable at will. I assume that there's no question that the terms of the contract would allow it to be renewed perhaps forever. I would agree with that, Your Honor. But the term is not indefinite, I would submit. It's crystal clear that it's a five-year term, renewable at SoCal's option or not, upon the giving of notice. So there's nothing indefinite about the contract, even though if those things happen every five years, it could go on and on. And I think there's two answers. Number one, that is the test that the Illinois courts apply, Your Honor. Does the contract offer the possibility of perpetual duration? And if it does, that contract is deemed indefinite as a matter of law. If it's indefinite. Yes, Your Honor. And that's the argument they make. But I think, with respect, that argument ignores how the contract and the automatic renewal clause actually works. This contract doesn't actually renew if you look at the terms of the agreement and how it works. It simply sets forth an arbitrary time period when SoCal has an option to terminate. If you look at the contract and how it works, this contract is no different from a contract that says it is going to continue indefinitely. It says that expressly, but reserves unto one side here, SoCal, the option to terminate the agreement every five years. That's how the agreement works in practice. Let me ask you this, counsel. Sometimes if one gets one's wish, one doesn't really want it after you get it, because I would assume that if I were to agree with you and we were to terminate this contract, then SoCal would get back all of the trademarks. I think there are two problems with that comment, Judge. The first problem is that it presumes that SoCal ever had the trademarks. The only Well, they assigned them, and everybody agreed that they had something to assign in return for some consideration. Actually, all that the agreements reference, Your Honor, is that SoCal's predecessor is assigning whatever right, title, and interest the individuals had in the marks to budget. We don't know what that is. We don't know if there was anything that they actually owned other than potentially a claim, and that assertion that they actually owned the marks is certainly not supported by anything in the record. Second, the argument that we would not be returning anything to them presumes that there is an obligation to do so. They claim that if the agreement was found terminable at will, that would necessarily bring about a remedy of rescission. That is not what happens under Illinois law when a contract is found terminable at will. It is found terminable at will, and it ends if one of the parties wants to end it. Rescission challenges the validity of the agreement from the beginning. We are not challenging that this was a valid agreement. What we are asserting is that the agreement is terminable at will. There is no right under Illinois law to a return of any consideration that they gave the budget should this agreement be declared terminable at will. Going back to the two questions that I mentioned earlier, we would submit to Your Honors that the Illinois Supreme Court has answered both of these questions. In the Fitzgerald v. Harrison case, the Court held quite clearly that a license for one year, renewable annually, is no different than an indefinite license. It's not very compelling that they would hold the same thing with respect to a contract. And that is so-called argument, Judge, and you're correct. It does concern a statute. But a couple of responses. First, the Illinois Supreme Court did not rely on any statutory construction principles in reaching its holding in the Fitzgerald case. It relies on common sense, the effect of the ordinance, which is the same argument that we're making. Common sense leads to the conclusion that this contract will continue for an indefinite period. Second, and more importantly, even if that was a distinction here, we've cited for Your Honors cases from Illinois which make clear that the rules for interpreting contracts are exactly the same in Illinois for the rules for interpreting statutes. There really is no functional difference there. I'd also like to address, since we're discussing that case, the argument which SoCal makes, and that is that the holding in Fitzgerald was somehow dicta. That's simply not supported by a reading of the opinion. If you look at the opinion, the conclusion that the license was in actuality an indefinite license was the sole basis for the Illinois Supreme Court's decision that the ordinance violated an Illinois statute which limited the terms of licenses to one year. Tell me why we shouldn't apply California law. The short answer, Your Honor, is because the parties agreed that Illinois law would apply to this dispute. What's the connection with Illinois today? I'm not sure from the record what the connection is with Illinois today, Your Honor. I must concede that. However, I don't think there is any question, and they don't dispute, that Illinois law had a substantial relationship to this transaction. At the time of the transaction. Absolutely, Judge. I'm aware of no case, and I did look for cases on this, Your Honor, which says that you can change a choice of law by moving somewhere down the line. I don't think that that would be a result that this Court would want to sanction, because then if one party did not like the choice of law in an agreement, they could move and thereby invalidate the choice of law provision. Illinois has had for an extremely long period of time, at least 40 years, a substantial connection to this transaction and to the contract. I think that is a more than sufficient basis under Section 187 of the Restatement II to enforce the parties' choice of law. How quickly was the state of incorporation changed? I believe it was changed in 2002, Your Honor, although I cannot tell the Court that I'm 100 percent on that. It's not in the record. I think it was 2002, after Sendant purchased some of the assets of the budget Did budget have its principal place of business in Illinois? Yes, it did. Yes, it did, Your Honor. It was outside of Chicago, but it was in the state of Illinois. Tying this agreement in with the Fitzgerald case is an easy leap. If an agreement for one year, renewable annually, is no different than an indefinite license, then a contract for five years, automatically renewable every five years, is also an indefinite contract. That deals with the first prong of the test. I want to address it in more detail, but that is our position on the first prong. In terms of the second prong of the test, we think that the Illinois Supreme Court has also answered that question. In the Jesperson case, the Illinois Supreme Court made clear that an equivocal and permissive right to terminate is not a sufficient means of termination that will render definite the term of an otherwise indefinite agreement. In Jesperson, the contract itself provided that its duration was indefinite. Yes, it did, Your Honor. Which to me is quite different from a term that provides that it is for five years but can be renewed. I would take issue somewhat with the characterization that the contract provides that it can be renewed, Judge. I think that's a big distinction. Unless somebody gets out. Unless SoCal wants out. Yes. The only way that this contract is in substance different from Jesperson is that the contract fixes at an arbitrary point in time, every five years, when SoCal can end it. The problem with that right is we don't know when it's going to come. Under Illinois law, the test for the means of termination. But you agreed to it. I mean, you did agree to that for some reason which is not part of this record and is, but you agreed to it. And you're not making an argument that it's unconscionable. You're just simply saying that that made it indefinite. Well, but you agreed, you agreed not, you agreed to not know whether or when they would elect not to renew. I would agree with that, Judge. However, that does not supply the term of the agreement. We cited a variety of cases from Illinois and the Seventh Circuit, Your Honors, in our brief, which stand for what we think is a simple and straightforward proposition. The fact that the parties entered into an agreement which is terminable at will is a determination that is made independently of whatever the party's intent was. If a contract is terminable at will, it's terminable at will as a matter of law, regardless of what the party's actually intended. Well, sure. But here, the party's intended for a five-year term that SoCal could elect not to have kick in again. Initially, the term is five years. But if you take a look at the way the agreement has functioned, it simply will go on forever in the exact same form. Neither party has the right to change one word in this contract. Not one word has ever been changed. It will continue in the exact same form until the end of time, unless and until that renders it indefinite. As a matter of law, we submit, Your Honor. I just keep coming back to the same question. In Jesperson, the parties provided that the contract shall continue indefinitely. I believe it's the exact phrase. I think that's correct, Judge. All right. Here, the parties provided that the contract would continue for five years and that SoCal could, at the end of that period or within whatever it is, 90 days, give notice that it wouldn't renew itself for another five years. It may go on forever. Yes, Judge. But so what? The fact that it may continue forever is the exact test that the Illinois courts have set forth in determining whether we can ascertain the term of the contract. If they contend that we can ascertain the term of the contract, the simple question to SoCal is, what is the term? We don't know what it is. We don't know when it will end. Therefore, it has the possibility of continuing in perpetuity. We cited the Yale security and the Walthall v. Rust cases, to Your Honors. That is the exact test that the Illinois courts have applied in determining whether a contract is of indefinite duration. Counsel, is there anything in the contract that would allow a budget to terminate? No provision whatsoever, Your Honor. None? None at all. Not even a provision which allows a budget to terminate for material breach. I read a provision in the contract about setting rates and said that it could be terminated if the rates weren't adhered to. I am not aware of any right to terminate in the contract. SoCal hasn't pointed out any. I know there is a rate provision which requires SoCal to comply with rate policies, but it doesn't offer a right to terminate. I won't dispute that such a right would be implied into the contract. Well, you could always try to terminate it. Absolutely, Judge, and I don't dispute that such a right would be implied into the contract. But as the Illinois Supreme Court made clear in Justice, and the fact that a right to terminate for material breach exists either expressly or implicitly does not lend a contract of indefinite duration a term. Now, SoCal tries to make a distinction in their papers between contracts which are indefinite and contracts which offer the possibility of perpetual duration, which both parties concede this contract does. They don't cite any case in support of that distinction. None exists, and we submit that it's contrary to Illinois law. We would also submit it's contrary to common sense. Contracts of indefinite duration, by their very definition, are contracts that do not have a fixed end point, but which contain some provision which allow the parties to legally terminate it. That's exactly what this contract is. A contract, and by the way, that's the definition from the Nicholas Labs and the payroll express cases which SoCal signs. This contract is no different. It continues without a fixed end, subject only to SoCal's right to serve a notice ending the renewal cycle. Do you view that any contract that is for a fixed term with an option to renew is terminable at will? It depends on the rest of the contract, Judge. That's just what I said. It's for a five-year term, and there's an option to renew for as many times as you want. If the option to renew continues ad infinitum and the contract does not set forth specific means for its termination, yes. So it has to be only one option to renew or only two. It has to be able to ascertain the term of the There are at least 15 or 20 options to renew for five years, so it could go on in effect, as far as you and I are concerned, in perpetuity. The fact that, as you and I are concerned, it would go on in perpetuity does not invalidate the contract. It may be a long term, but it is still a definite term, and there is an Illinois case out there which upheld a 999-year lease. This case may go on 995 years, 9,095 years. We'll simply never know. SoCal can send a notice terminating it for some reason or for no reason, or they cannot send a notice. That's the problem. We'll simply never know whether or not this contract is going to terminate. And that's This is 2A. This is obligations on the licensee. Judge, you're referring to the original agreement, the 1960 agreement. That provision does not exist in the 1962 agreement, the amended franchise agreement, which is the subject of this proceeding. Now, they incorporated I'm sorry. I didn't hear you, Your Honor. They incorporated parts of the original agreement in the other agreements. They referenced certain whereas clauses. This provision is not set forth in the 1962. That's not part of the contract today. Not part of the 1962 agreement, no, Your Honor. I want to briefly address the Lake Forest case because it is the focus of their brief. It's the only case which even arguably supports their position. First, I want to point out that Lake Forest stands alone. SoCal has cited a number of cases from other jurisdictions which they support Lake Forest's proposition. A review of those cases shows that none of them stand for the proposition that a contract which automatically renews has a definite term. In contrast, all of those cases upheld the contracts at issue in those cases because the contracts set forth means for their termination. That's in stark contrast to this case. There is no means for termination in this case other than SoCal's right to serve a notice ending the renewal cycle. Second, Lake Forest is a remarkably different case than this case. In Lake Forest, the parties had to exercise an option to renew. This case, in contrast, the 1962 agreement automatically renews potentially forever. In Lake Forest, you could make an argument that the renewal contracts were different because the parties had built into their original agreement a mechanism whereby fees would fluctuate over time depending upon the number of students that enrolled in the Lake Forest school. That does not exist here. Neither party has any right to change any term of the 1962 agreement. It has existed and will continue to exist in the exact same form until the end of time unless SoCal decides to end it. Third and most importantly, if you look at the Lake Forest opinion, it is hardly certain that it actually comes to a conclusion on this term issue. And I don't say that lightly because it is the focus of their brief. If you look at the Lake Forest opinion, the Court first says the argument that the automatic renewal clause renders the agreement perpetual is a fiction. We don't dispute that. This is not a perpetual agreement. A perpetual agreement is one that runs on without end forever with no means for its termination. That's not this agreement. Then the Court says that the fact that the agreement could continue in perpetuity, that a perpetual agreement is not ambiguous. Perpetuity does not equal ambiguity. Again, I'm not sure how that's relevant to the opinion because the Court previously said that the agreement was not ambiguous. The only time the Court actually addresses the term issue is in a footnote. It says that the more sensible view of the duration is that the contract has a term which continues for successive terms. That doesn't really take into account the impact of the renewal clause. In fact, the Court says it's a semantic difference. If you look at the opinion, the Court actually hangs its hat on the second part of the test. It determines that the agreement had a definite duration because it was terminable from material breach, and we know that since Jefferson was written, that conclusion is no longer good law. Even if Lake Forest came to the conclusion they said it came to, we would submit that that conclusion is contrary to the Harrison case and to the subsequent opinions from the Seventh Circuit in Echo and Moor Court, all of which indicate that a contract which renews automatically is a contract of indefinite duration. Judges, I'd like to reserve the balance of my time. Thank you. Please be seated. Please be seated. Ron Olson representing the defendant, Applee Budget Rental Car of Southern California referred to as SoCal. First, let me acknowledge and thank the Court for expediting this appeal in deference to Mr. Bird, and I would like to begin by responding further to some of the questions that have been raised by the Court thus far. Judge Reimer, you noted the distinction between this case and those relied upon by counsel for the plaintiff here being a five-year term, and very much like the Lake Forest case with a fixed three-year term where Lake Forest and a number of other Illinois cases said that a court has no power to rewrite a contract into a contract terminal of will unless there is, one, doubt as to duration, and, two, doubt as to a manner of termination. And the fact that there was in Lake Forest a three-year term, here a five-year term, eliminates that doubt as to the duration issue. With regard to the manner of termination, as in Lake Forest, there was a notice provision. Lake Forest's notice provision was slightly different in that it took notice to renew. Here there is renewal unless there is notice to terminate, but that is a distinction without a legal difference in the sense that both define precisely an identifiable means, manner of termination. And contrary to what has been suggested by counsel for the plaintiff, Lake Forest did not go off on the fact that there was also termination for default. I acknowledge that the Jesperson case came along, but it's important to point out in response further to Judge Reimer's inquiry, for instance, the Bell Labs case, which confirmed precisely what the Court said. In Bell, footnote 6, nor does Jesperson apply to a situation arising with Bell's addendum, which contains an initial three-year term with an automatic provision, I think is responsive to the Court's inquiry. Secondly, with regard to fairness, Your Honor, Judge Fletcher asked about the trademark being transferred. I believe counsel for the plaintiff misstated that, said that you couldn't tell what they owned. Well, that is laid out precisely in the 1962 agreement in the recital clause, where it says, and I quote, whereas pursuant to said agreement, the 1960 agreement, this recital in the 62 agreement, budget has acquired all of the right title and interest into the trademark and service mark budget rent-a-car. And that recital provision is incorporated in the contract itself in Article I, where it says each and all the whereas clauses are part of the contract. Secondly, I think it is important to know that when the fairness question gets posed by the plaintiff, it's a one-sided kind of issue being put forth. The plaintiff suggests that it's unfair for this contract to be continually renewed by SoCal because it does not pay an annual fee. Your Honor, there are plenty of license franchise agreements where the payment's up front, and this was a substantial payment up front. It was the trademark itself that got conveyed. On top of that, there is a continued obligation on the part of SoCal to provide full franchise services pursuant to the manner in which budget, the national budget, sets those standards. In other words, we have to operate pursuant to the demands they place upon us, and any failure to do that would, of course, subject us to the threat of breach. And as we operate in that way, we presumably are continuing to build value in the budget trademark. The third question asked, I believe, went to the issue of the Illinois Supreme Court case, the Fitzgerald case. That is, as I think the Court recognizes, merely a case of statutory interpretation decided in 1912, pretty simple proposition. State law trumps local ordinance, particularly when you're talking about the dram shop law and liquor regulation. It had nothing to do with contract principles. It did not cite contract principles. And importantly, that case, so important to the plaintiffs now, was not even cited to the court below. And furthermore, so far as I can tell, has never been cited in any contract case going to the law of indefiniteness of contracts. The court further inquired about the California facts or the Illinois facts. I think all we can say about that is that today we know that while budget was originally incorporated in Illinois and headquartered in Illinois, on the record that we have, the only facts that we have are that the plaintiff is incorporated in Delaware today and based in New Jersey. And there is no, on the face of the complaint, connection with Illinois. Well, the contract is part of the complaint. Why should the removing of the state of incorporation affect the choice of law? I'm not sure it does, Your Honor. I think that the choice of law provision is controlling in any contract, so long as there is a substantial connection to the law chosen. And at the time of the contract, we acknowledge there was clearly a substantial connection. The question is whether or not that question, substantial connection, is asked as of the time of the lawsuit or as of the time the contract was made. But does it make a ton of difference in this case? It doesn't make a difference to us because the law of Illinois is, as the law of California, both very clear that these contracts are not contracts indefinite by reason of the fact that there is a specified duration and by reason of the fact that there is a specified manner of termination. So under Illinois law, we win. Under California law, it's even more clear because California will enforce contracts of indefinite duration. So it doesn't make any difference. The final point I believe made or asked about was related to the Lake Forest opinion, which, as we've advocated in our papers, we believe to be on all fours with this case. It is a case where there was a fixed term with automatic renewals. And I believe plaintiff's counsel was suggesting that we are here contending that this makes for a perpetual contract. That is not our position. We believe that this is a contract of a term of years that can be renewed by the inaction of SoCal. It can be terminated, and it can only be terminated by SoCal if an appropriate notice is given six months before the end of the five-year term. So both parties are going to know within six months of the end of the then-extant term whether or not they're bound for another five and a half years or whether or not their obligations are going to expire in six months. Quite appropriate, quite clear. I would like to dwell for just a moment on what seems to me to be the fundamental care that is being made by the plaintiffs in presenting this case. They've advocated in the first sentence of the ultimate brief in this case, the reply brief, that the essential question for this court to answer is when does this contract end? They repeated it again this morning. They criticized the brief filed by SoCal because, as they said, you could look in vain through our 50 pages and not find the date on which this contract would end. Their complaint starts that premise. In paragraph 16 of their complaint, they allege that the contract, in this instance, lacked any provision which set a date certain for termination. And then in the very next paragraph, paragraph 17, they say, therefore, it's indefinite. That's the wrong question. Courts do not impose upon parties the need to set a date certain for it to avoid the indefiniteness test. The question is not when, but whether, whether the courts can determine what it is that will constitute termination so that they can determine whether or not there's been a terminated contract. And that has been established in a whole line of cases that we've cited to the court, from Lake Forest to Consolidated Labs, importantly, I believe, and, of course, in other jurisdictions as well. Illinois is not an outlier here. The Second Circuit in the Nicholas Labs case came to the same very conclusion in another case that is on all fours with us where it was speaking to New York law. And Orkin Exterminating did the same thing in the Eleventh Circuit. Z Medical here, a court of appeal decision in the state of California, came to the same judgment. These were all instances where the events of termination were clear. The manner of termination was clear. There was no doubt about the court being able to discern what would constitute termination. But in each of those instances, no one could answer the question when, not Judge Shader in Lake Forest, not any of the other courts that considered this issue. Are there any other grounds on which the budget could rely upon to try and terminate the contract? Any other grounds? Any ground. Any ground. The budget could rely on. Well, it could rely on breach of contract, certainly. Implied into this, of course, are all the laws of the states regarding termination for material breach. Even the Jesperson case that was cited by the plaintiffs takes note of the fact that that is, that termination for material breach is implied into the contract. So if they don't think we're operating in accord with their rules and regulations and standards, they could seek to claim that there is a material breach and seek to terminate the contract. Other than that, it is our position that we have the power of renewal. And they've made a big deal out of the fact that that power resides in one party, in us. That doesn't make for indefiniteness any more than a contract for term of years with automatic renewal. The indefiniteness law, as we know, requires them to prove two things. One, doubt is duration. Two, doubt is to the manner of termination. It does not relate to who has the power to force the automatic renewal. Lake Forest, that power resided in one party. In the New York case, the Second Circuit case, Nicholas Labs, that power but for termination for breach and insolvency also rested only in the one party. So there are a number of cases where the power to terminate resides in a single party or the power to mandate renewal resides in a single party. And that does not give rise to. After reading the briefs and all the papers that were submitted here in the district court, I don't know. It's been 40 years. Is that how long it's been? 1960. And it's a little hard for me to speak about this in any detail. I was trying to figure out what was it after 40 years that suddenly the light came on that this was a contract for indefiniteness? Well, a new owner. Senate just became the owner. I mean, there have been a series of owners. This is not in the record of the case. And I want to be careful about that. And the court should not rely on this. But the fact of the matter is. There's some little hint in the record. The original contract is very clear. The original contract, there was a partnership that owned Budget Rent-A-Car of Southern California. That partnership, one person wanted to go nationwide and the other didn't. They split the assets. Mr. Lederer, who signed on both sides of that original contract, took the trademark and went national. Mr. Merkins stayed in Southern California and Mr. Byrd joined him. Ultimately, Mr. Lederer sold the business to others, including Ford Motor Company and I forget who else. And most recently, very recently, Senate came in and bought the company and decided they'd take a run at this, is my read. But you're right that it has lived on for a long number of years. And nobody at this point contends that Budget of Southern California is not performing. There's no allegation of breach here. And I think it's also important to recognize that there are no factual issues being raised by the plaintiff. The plaintiff has chosen to go forward on a legal question alone. The plaintiff is not contending that this contract is inconscionable. They've not alleged what's required for that. The plaintiff is not alleging that there is anything uncertain about the contract, that it's ambiguous. That's not an allegation. The plaintiff did not seek leave to amend. The plaintiff has served up a straight legal question. And on that basis, we believe the court can resolve this matter based on both Illinois law and the law of the State of California. I thank the court for its attention. Thank you, Your Honors. Briefly, counsel asserted that a contract does not need to set a date certain for its end, for its term to be definite. I agree with that. However, if it fails to do so, it must set forth a manner for its termination that enables the court to determine when the contract will end. And the standard for that under Illinois law is clear and undisputed. It must be specific. It must be objective. And it must be independent of the will of the parties. If one party can trigger a terminating event simply because they do not want to perform anymore, that is not sufficient under Illinois law. Here, SoCal can decide to send a notice ending the contract for some reason, for no reason, or they may never send it. We will never know. And that's why the contract is of indefinite duration. Thank you, Your Honors, for your time and attention to this matter. Thank you, Your Honor. The court appreciates the argument from both of you. It's very helpful. And we will stand and recess.  All rise. The court for this session stands adjourned. The court is adjourned. The court is adjourned. The court is adjourned.
judges: B. Fletcher, Rymer, Paez